# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 20, 2016

## STATE OF TENNESSEE v. TIFFANY CLEGG

### Appeal from the Circuit Court for Blount County
### No. C-19794    Tammy M. Harrington, Judge

---

### No. E2015-01134-CCA-R3-CD – Filed March 14, 2016

---

The Defendant-Appellant, Tiffany Clegg, appeals the trial court's revocation of her probation and reinstatement of her effective eight-year sentence in the Department of Correction. On appeal, the Defendant-Appellant argues that the trial court abused its discretion by reinstating a sentence of full confinement. Upon review, we affirm the judgment of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Raymond Mack Garner, District Public Defender; and James Matthew Elrod, Assistant Public Defender, Maryville, Tennessee; and Joseph Liddell Kirk (on appeal), Knoxville, Tennessee, for the Defendant-Appellant, Tiffany Clegg.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zenter, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew L. Dunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On May 7, 2012, the Defendant-Appellant pleaded guilty to two counts of the sale and delivery of a Schedule II drug. She received an effective eight-year probationary sentence, after service of ninety days incarceration. The trial court initially ordered her to serve the ninety-day confinement obligation on weekends in the Blount County jail. On September 5, 2012, the trial court modified its original order to allow the Defendant-Appellant to serve her ninety days on any two consecutive days each week. On May 24, 2013, a warrant was filed alleging that the Defendant-Appellant had refused to report for her court-ordered jail time for nine months. An amended warrant was issued on May 8,

2015, alleging that she had further violated her probation by failing to report to her probation officer as required.[1]

At the May 18, 2015 hearing, Michael Caldwell, a probation and parole officer, testified that he had reviewed the Defendant-Appellant's file and supervision history. The file showed that the Defendant-Appellant had served only twenty-eight days of her ninety-day split confinement obligation and that she had last reported to jail on September 29, 2012. A violation warrant was filed against the Defendant-Appellant on May 24, 2013, based on her refusal to report for her court-ordered jail service. An amended violation warrant was filed on May 8, 2015, alleging that the Defendant-Appellant had not reported to her probation officer since May 7, 2013. The Defendant did not contact the probation office during the intervening two-year period between the two warrants. On cross-examination, Officer Caldwell agreed that the Defendant-Appellant had properly reported for a year of her probation.

The Defendant-Appellant, age twenty-nine, testified that she had not finished high school but was currently working to obtain her GED. She said that she reported as required for about a year of her probation, until a violation warrant was filed in May of 2013. She explained that, in September 2012, she missed her first weekend of jail time due to medical issues related to a terminated pregnancy. She also said that her car broke down around that same time. She contacted her probation officer about the car problem and presented medical documentation showing that she needed to remain out of confinement for thirty days after her terminated pregnancy.

The Defendant-Appellant was the provider and primary caregiver for her three children, ages three, six, and nine. She explained that, when her car broke down, she used the bus for transportation to work and to meetings with her probation officer. She stated that her probation officer "understood my issues" and did not want to file a violation against her. However, the officer eventually called and notified the Defendant-Appellant that a violation was filed. The Defendant-Appellant believed that she would be arrested if she continued to report and, at that point, she contacted her attorney. She said that her attorney told her to be prepared for a year of additional jail time and she "panicked." She said that she quit her job to "shelter[] myself in the house with the kids[.]" She had sole custody of her children and her oldest child had heart disease and had undergone multiple heart surgeries. She said that his condition required regular visits to a cardiologist and that, due to complications from his heart surgeries, he had also developed problems with his eyesight that required additional medical care. She was primarily responsible for taking her child to treatment and caring for him during recovery, but her mother helped as well.

---

[1] We note that the amended warrant is not included in the appellate record.

The Defendant-Appellant conceded that it was a "no brainer" that she had violated her probation. She testified that, upon release, she intended to finish her GED and continue furthering her education. At the time of her arrest, the Defendant-Appellant had been working as a night shift manager for a little over a year. Her position was still available, but she did not know how long it would be held open for her.

On cross-examination, the Defendant-Appellant testified that she originally served her split confinement on weekends, from Saturday morning until Monday morning. After about a month, she switched her service time to Friday evening until Sunday evening. In September 2012, her service time was adjusted a third time. The Defendant-Appellant agreed that, less than a month later, she stopped reporting to jail altogether. She conceded that from September 2012 until May 2013, her probation officer repeatedly warned her to report for her split confinement. She also agreed that after a violation was filed, she attempted through her attorney to negotiate her jail sentence while remaining out of custody.

On redirect examination, the Defendant-Appellant testified that adjustments were made to her jail service time in order to accommodate her job. She also said that she stopped reporting to jail in September 2012 because her car broke down, and she had no form of transportation to Blount County.

The Defendant-Appellant requested the court allow her to serve an additional year of split confinement rather than reinstate her full sentence. Following closing remarks from counsel, the trial court revoked the Defendant-Appellant's probation and ordered her to serve her original sentence in confinement, with credit for time served. The trial court noted that it was undisputed that the Defendant-Appellant violated her probation and had been on "absconder status" for almost two years. The trial court, emphasizing the seriousness of her violation, stated the following:

> There were many reasons offered for her failure to complete those 90 days. Start with the proposition that she was allowed to serve those 90 days on weekends, that she was allowed to not have to serve this sentence in the penitentiary. There have been reasons put forth as far as job, kids, about the weekends, and then there were issues related to the absconder status of job, kids, truck broke down, et cetera.
>
> . . . It's very serious. You cannot be properly supervised, you cannot complete any terms of probation, you can't ask for this court to consider the fact that for the few months that you reported that you did report, when you're going to be on an absconder status for the better part of two years. Two years is a long time to have someone on an eight-year sentence, a

Class B felony, out in the community with no supervision, no drug screens, no checking of employment, no court costs, no checking of status, living, curfew, all of those things for a Class B felony for almost two years. Couple that with the fact that she was given an opportunity to serve it on weekends and still wouldn't report to serve her jail time, the Court has no other choice – based upon the fact that I do not believe she would complete a term on probation, do not believe it's in the community's best interest -- to revoke and have her serve the balance of the sentence in custody.

The court then entered a written revocation order, and it is from this order that the Defendant-Appellant now timely appeals.

## ANALYSIS

On appeal, the Defendant-Appellant argues that the trial court abused its discretion by revoking her probation and reinstating a sentence of full confinement. Although she concedes that she violated the terms of her probation, she argues that the trial court improperly failed to consider her mitigating circumstances in determining the appropriate consequence. She maintains that "[i]mposing an additional year of split confinement . . . would be a more reasonable resolution than ordering confinement for the balance of the entire sentence[.]" The State argues that the evidence provided an adequate basis for full revocation of the Defendant-Appellant's probation. Upon review, we agree with the State.

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." T.C.A. § 40-35-311(e) (2012). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id. (citing Harkins, 811 S.W.2d at 82). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3-CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar. 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL

-4-

1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); T.C.A. §§ 40-35-308, -310, -311 (2012).

The record shows that the Defendant-Appellant conceded to the violation of probation in this case. It further shows that she refused to serve her court-ordered split confinement for nine months and failed to report to her probation officer after a violation warrant was filed in May 2013, a period of almost two years. The Defendant-Appellant argues that trial court failed to consider her circumstances in its revocation determination and that an additional year of split confinement would have been a more appropriate remedy. Our review of the record reflects that the trial court considered the Defendant-Appellant's work and family responsibilities, as well as her transportation issues, in its reasoning. However, the trial court ultimately found that these mitigating circumstances were offset by the Defendant-Appellant's prolonged history of noncompliance with the terms of her probation, despite the continual warnings of her probation officer. Under these circumstances, the trial court properly revoked the Defendant's probation and was further authorized "to cause execution of the defendant's original judgment as it was originally entered." Hunter, 1 S.W.3d at 647 (citing T.C.A. § 40-35-310). Accordingly, the Defendant-Appellant is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE

-5-